UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>Jeremiah Jon Schacherer,<br>Andrea Renee Schacherer,<br><br>    Debtors<br>_____<br><br>Erik Duvall d/b/a Duvall Construction,<br>    Plaintiff<br>vs.<br><br>Jeremiah Jon Schacherer,<br>    Defendant | Chapter 7<br><br>Bankruptcy No. 24-00204<br><br><br><br><br><br>Adversary No. 24-09017 |

**OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The matter before the Court is a Motion for Partial Summary Judgment (Doc. 11) filed by Erik Duvall d/b/a Duvall Construction. The Court held a telephonic hearing on May 16, 2025. Attorney Jessica Board appeared for Erik Duvall ("Plaintiff"). Attorney Wil Forker appeared for Jeremiah Schacherer ("Defendant"). The Court took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

**I. STATEMENT OF THE CASE**

Defendant filed a Chapter 7 Petition on March 11, 2024. The Petition listed Erik Duvall Construction as the holder of a nonpriority unsecured claim totaling

$209,914.26. Plaintiff filed this adversary proceeding asking the Court to find the debts owed to him by the Defendant to be non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as debt obtained by false pretenses, a false representation, or actual fraud (Doc. 1). Defendant filed his Answer (Doc. 4) and Plaintiff then filed a Motion for Partial Summary Judgment on April 15, 2025. Debtor filed a Reply (Doc. 17) on May 14, 2025.

## II. Factual Background

The factual record for summary judgment is as follows. In September 2022, Plaintiff provided an estimate to the Defendant for the construction of a home based on plans the Defendant had provided. The estimate included the cost of materials and labor in the amount of $338,976 and was specifically conditioned on Defendant providing his own "sweat equity" to the project. Defendant's sweat equity was designed to be a computation of the value of the labor that he would contribute to the project, plus the value of the land that he had previously purchased. This sweat equity was estimated by the Defendant to be worth $77,560.98. This amount included the purchase of the land for $24,000. The total cost of the project, including Defendant's sweat equity, was $416,536.98.

Defendant provided the estimate and information on his sweat equity to Bank Plus seeking approval for a construction loan in the amount of $340,000. He informed Plaintiff on November 18, 2022, that the loan had been approved. Nine

2

days later, Defendant told Plaintiff that he would not be able to work as much as the original contract contemplated. Defendant claims that by April 2023, he had told the Plaintiff dozens of times that he could not work every day because his business would suffer. Defendant worked 84 hours between April and October 2023. Defendant withdrew $20,000 of the loan proceeds for the value of the land, even though he had included the cost of the land as part of the sweat equity he would contribute.

On January 22, 2023, Defendant also asked Plaintiff if he would be interested in investing in his business, J's Custom Works, Inc. They spoke several times over the next few months about it. Plaintiff and Defendant eventually formed a business relationship and planned to create a new business after Defendant went through bankruptcy. In June 2023, Plaintiff had his crew work on jobs for Defendant's business. By fall of 2023, Defendant had apparently changed his mind about working with Plaintiff. Defendant never communicated this to Plaintiff, who created The Heartland Company, LLC, for the business venture with the Defendant.

Plaintiff claims that Defendant instructed him to stop working on the home in October 2023. Defendant asserts that he sent Plaintiff a written request for all material receipts, a construction timeline, and supporting documentation on August 16, 2023. Until those items were provided, the lender would not release the funds. Plaintiff worked on the home until it "was sealed from the elements" and did not

submit receipts to the Defendant until after Defendant terminated the contract on October 12, 2023. Defendant claims he then worked approximately 49 hours in November and December 2023. Defendant paid Plaintiff $168,006.29 of the $338,976.00 estimate for work on the home. The last payment the Plaintiff received for work on the home was in May 2023. Plaintiff claims the remaining amount is owed and that the debt is non-dischargeable.

### III. DISCUSSION

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue of trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion." In re Maxey, 395 B.R. 665, 670 (Bankr. W.D. Mo. 2008) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

Section 523 of the Bankruptcy Code provides several exceptions to discharge. Relevant here is 523(a)(2)(A), which states that a debtor will not be discharged "from any debt … for money, property, [or] services, … to the extent obtained by false

4

pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A). "[E]xceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." Bellco First Fed. Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997).

In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), Plaintiff must prove the following by a preponderance of the evidence:

1. The debtor made a false representation.
2. The debtor knew the representation was false at the time it was made.
3. The representation was deliberately made for the purpose of deceiving the creditor.
4. The creditor justifiably relied on the representation.
5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

R&R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010) (citing Burt v. Maurer (In re Maurer), 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000)).

"To qualify as a false representation or false pretense under 11 U.S.C. § 523(a)(2)(A), the statement must relate to a present or past fact." Medlock v. Meahyen (In re Meahyen), 422 B.R. 192, 201 (Bankr. D. Minn. 2010) (quoting Gadtke v. Bren (In re Bren), 284 B.R. 681, 690 (Bankr. D. Minn. 2002)). Generally, a promise to perform at some point in the future is not a misstatement of a present or past fact and "therefore cannot be defined as a false representation or a false pretense." Shea v. Shea (In re Shea), 221 B.R. 491, 496 (Bankr. D. Minn. 1998) (quoting Bank of Louisiana v. Bercier (In re Bercier), 934 F.2d 689, 692 (5th Cir.

5

1991)). "A debtor's promise related to a future act can constitute actionable fraud, however, where the debtor possesses no intent to perform the act at the time the debtor's promise is made." In re Bren, 284 B.R. at 690. A promise to perform in the future is not actionable fraud merely because the debtor fails to do so. Clauss v. Church (In re Church), 328 B.R. 544, 547 (B.A.P. 8th Cir. 2005). See also Paul v. Farmland Industries, 37 F.3d 1274, 1277 (8th Cir. 1994) ("It is not enough that for any reason, good or bad, the speaker changes his mind and fails or refuses to carry his expressed intention into effect.").

Plaintiff argues that Defendant committed fraud when he (1) represented that he would contribute a certain amount of sweat equity to the home build and (2) when he represented his intentions to form a business relationship with the Plaintiff. Because both representations are promises to perform in the future, Defendant must have made those promises with no intent to follow through at the time he made them. Plaintiff has not carried his burden to show that this was the case.

Plaintiff has not set forth undisputed facts that would indicate that Defendant had no intention to follow through with his promise to contribute a certain amount of sweat equity to the project. Plaintiff points to the fact that Defendant told him he would not be able to work the amount of time originally contemplated less than ten days after the loan was approved and that Defendant "knew that time working at the [h]ome would be time away from his regular job." (Doc. 11-2, p. 7). This alone is not

6

enough for the Court to conclude that Defendant had no intention of providing the sweat equity at the time the estimate was created or the loan approved. The fact that Defendant appears to acknowledge that if he could not contribute any portion of the sweat equity, he would have to take out a larger construction loan, choose more affordable finishings, or pay a third party to work on the home, raises factual issues about whether he intended to mislead Plaintiff. Defendant also contributed at least some portion of the sweat equity contemplated, which could be read to suggest that the Defendant found himself simply unable to fulfill his end of the bargain—not that he never intended to do so. These are fact issues for trial.

In addition, Plaintiff acknowledges that "[b]ased on the communications between the parties and Defendant's representations at his deposition, there is no question that Defendant *intended to form a business relationship with Plaintiff.*" (Doc. 11-2, p. 9) (emphasis added). If the Defendant intended to form the business relationship at the time he made the representation, it is not enough, standing alone, that he later changed his mind or was otherwise unable to do so. See Paul, 37 F.3d at 1277. The question of his intentions remains one for trial.

Because Plaintiff has not shown that it is undisputed that Defendant did not intend to follow through with the promises to perform at the time he made them, summary judgment is not warranted here. The Court need not consider the remaining elements of the claim under 11 U.S.C. § 523(a)(2)(A).

## IV. CONCLUSION

**IT IS ORDERED**, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

Ordered:

July 11, 2025

Thad J. Collins
Chief Bankruptcy Judge